IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 12-01251 (ESL) |
| JORGE A. PÉREZ LEÓN<br>     Debtor | CHAPTER 7 |
| YOMAYRA SANTIAGO VÉLEZ<br>     Plaintiff | ADV. PROC. NO. 13-00040 (ESL) |
| vs. | |
| JORGE A. PÉREZ LEÓN,<br>NOREEN WISCOVITCH RENTAS<br>     Defendants | |

OPINION AND ORDER

This case is before the court upon the *Motion to Dismiss and Memorandum of Law* (the "*Motion to Dismiss*", Docket No. 6) filed by the defendant Jorge A. Pérez León (the "Defendant") and *Motion Joining [the] Co-Defendant's Motion to Dismiss* (Docket No. 10) filed by the Chapter 7 Trustee.  The Defendant and the Chapter 7 Trustee sustain that the court lacks jurisdiction to consider a domestic relations controversy and that the Plaintiff's contentions subvert the distribution scheme established in the Bankruptcy Code.  For the reasons stated below the Defendant's *Motion to Dismiss*, as joined by the Chapter 7 Trustee, is denied in part and granted in part.

Factual and Procedural Background

The Plaintiff and the Defendant were married until July 15, 2010, when the Puerto Rico Court of First Instance, Caguas Superior Section, issued a divorce decree.  See Docket No. 1, pp. 9-11.

On February 22, 2012, the Defendant filed a voluntary Chapter 7 Bankruptcy Petition with its corresponding schedules (Lead Case Docket No. 1).  In *Schedule A*, he reported a 50% undivided interest in a real property located at Urb. Los Flamboyanes, Gurabo, PR, which he

-1-

also informed was assigned as "homestead"[1] for his dependent children and is being paid by his ex-wife who lives the property (the "Real Property", Lead Case Docket No. 1, p. 20). No further real property was listed. Id. On June 21, 2012, the Plaintiff filed a priority domestic support obligations claim in the amount of $4,150.92. See Claims Register No. 4-1. Her claim was not objected. On June 13, 2012, the court entered the *Discharge of Debtor* (Lead Case Docket No. 14).

On March 6, 2013, the Plaintiff filed a *Complaint* (Docket No. 1) for this court to authorize the liquidation of conjugal community property between her and the Defendant, now her ex-husband, under Sections 541 (property of the estate) and 726 (distribution of property of the estate) of the Bankruptcy Code and Fed. Rs. Bankr. P. 7011(1) and (3)[2]. The Plaintiff's main purpose in filing her *Complaint* is to propose an offer[3] to purchase her 50% share of the Defendant's participation in the Real Property and assume the mortgage debt on it. See Docket Nos. 1, p. 5, ¶¶ 19-21, and 11, p. 2, ¶ 7 and p. 4, ¶ 19.

On April 9, 2013, the Defendant filed a *Motion to Dismiss* (Docket No. 6) arguing that the *Complaint* poses a domestic relations issue over which this court has no jurisdiction and attempts to subvert the order of distribution established in the Bankruptcy Code. The Defendant further argues that he claimed an exemption on the real property jointly owned by him and the Plaintiff and no party in interest (including the Plaintiff) timely objected it. He further contends that the *Complaint* contemplates as a remedy a distribution that would result in the elimination of the Defendant's right to claim exemptions under 11 U.S.C. § 522, to which he is entitled because no objections were timely filed. The Defendant concludes that the *Complaint* (Docket No. 1) fails to state a claim upon which relief can be granted and therefore it should be dismissed.

---

[1] See footnote 4, *infra*.

[2] Fed. R. Bankr. P. 7001 governs adversary proceedings in bankruptcy and provides a list of controversies that must be conducted through adversary proceedings. Subsections (1) and (3) include within those controversies a request to recover money or property and the authorization to sell the interest of the bankruptcy of the estate and of a co-owner in property of the estate. Fed. R. Bankr. P. 7001(1) and (3).

[3] In ¶ 20 of her *Complaint*, the Plaintiff detailed the break-down of her proposed offer totaling $7,400.00 (Docket No. 1, p. 5, ¶ 20).

On April 11, 2013, the court entered an *Order [for the Plaintiff] to Show Cause* (Docket No. 7) why the *Complaint* should not be dismissed for the reasons stated in Defendant's *Motion to Dismiss* (Docket No. 6) in twenty one (21) days.

On April 21 2013, the Chapter 7 Trustee filed a *Motion Joining Co-Defendant's Motion to Dismiss* (Docket No. 10) adopting and incorporating the Defendant's *Motion to Dismiss* (Docket No. 6).

On May 2, 2013, the Plaintiff filed a *Reply to Debtors Motion to Dismiss Dkt # 6 & Reply to Trustee's Joining Motion to Dismiss Dkt # 10* (Docket No. 11) averring that her intention is to purchase the community property that she currently resides in, to wit, the Real Property.  She also claims to be the only person making mortgage payments on the Real Property, that it was declared homestead (hogar seguro)[4] and that she is the only one who has made an offer on the property in the best interest of the estate and all parties involved.

On May 2, 2013, the Plaintiff filed a *Motion in Compliance With Order* (Docket No. 12) requesting the court to deem the Order entered on April 11, 2013 complied in light of her *Reply to Debtor's Motion to Dismiss* (Docket No. 11).

No further replies or briefs were filed.

## Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A), (B), and (N).

## Applicable Law & Analysis

*(A)    Standard for Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)*

Fed. R. Bankr.P. 7012 makes Fed. R. Civ. P. 12(b)(6) applicable to adversary proceedings.  The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to assess the legal feasibility of the complaint, not to weigh the evidence which the plaintiff offers or intends

---

[4] The property was declared homestead ("hogar seguro") in favor of the Plaintiff's and Defendant's two minor children in the divorce decree issued by the Puerto Rico Court of First Instance, Caguas Superior Section, on July 15, 2010. See Docket No. 1, p. 10. The "homestead" refers to the possession of the home by the custodial parent after divorce afforded in Article 109-A of Puerto Rico's Civil Code, 31 L.P.R.A. § 385a, not the homestead afforded in Puerto Rico's Home Protection Act No. 195 enacted on September 13, 2011, as amended.

to offer. See Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2nd Cir.1984); Citibank, N.A. v. K-H Corp., 745 F. Supp. 899, 902 (S.D.N.Y. 1990).

Fed. R. Civ. P. 8(a)(2), applicable to adversary proceedings through Fed. R. Bankr. P. 7008, mandates that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Although detailed factual allegations are not required, the Rule does call for sufficient factual matter". Surita Acosta v. Reparto Saman Inc. (In re Surita Acosta), 464 B.R. 86, 90 (Bankr. D.P.R. 2012). Therefore, to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. The Twombly standard was further developed in Ashcroft v. Iqbal, 556 U.S. 622 (2009), advising lower courts that "determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. "In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. In sum, allegations in a complaint cannot be speculative and must cross "the line between the conclusory and the factual". Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011). "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio–Hernandez v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

In Schatz v. Republican State Leadership Committee, 669 F.3d 50, 55 (1st Cir. 2012), the U.S. Court of Appeals for the First Circuit established a two-step standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Step one: isolate legal conclusions. Step two: take the

complaint's well-pleaded (non-conclusory) allegations as true, drawing all reasonable inferences in favor of the plaintiff and determine if they plausibly narrate a claim for relief. Also see Pérez v. Rivera (In re Pérez), 2013 WL 1405747 at *3, 2013 Bankr. LEXIS 1561 at **9-10 (Bankr. D.P.R. 2013); Zavatsky v. O'Brien, 902 F. Supp. 2d 135, 140 (D. Mass. 2012).

In the instant case, the *Complaint* is factually well-pleaded.  Notwithstanding, after drawing all the reasonable inferences from the Plaintiff's allegations in her favor, the court determines she does not have a plausible claim for relief for the reasons stated below.

*(B)      Property of the Bankruptcy Estate and Exemptions*

One of the legal grounds upon which the Plaintiff seeks relief is 11 U.S.C. § 541.  See the *Complaint*, Docket No. 1, p. 1, ¶ 1.

Subject to the debtor's right to claim certain property as exempt under 11 U.S.C. § 522, when a debtor files for bankruptcy "all [of his/her/its] legal and equitable interests ... in property as of the commencement of the case" become part of the bankruptcy estate "wherever located and by whomever held".  11 U.S.C. § 541(a)(1).  The bankruptcy estate is created automatically by operation of law immediately after the bankruptcy petition is filed.  See 11 U.S.C. § 541(b); Hon. Nancy C. Dreher, Hon. Joan N. Feeny and Michael J. Stepan, Esq., Bankruptcy Law Manual, Volume 1, §§ 5:1-5:2 (2012-2) pp. 944-946.  "It is from this central core of estate property that the debtor's creditors will be paid."  Wiscovitch-Rentas v. González-Claudio, 484 B.R. 1, 11 (Bankr. D.P.R. 2012), quoting Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2013).

Under Section 541(a)(2)(B) of the Bankruptcy Code, the bankruptcy estate also comprises "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is … liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."  11 U.S.C. § 541(a)(2)(B).  The term "spouse" used in Section 541(a)(2) includes a former spouse when the ex-spouses have not partitioned the property of their former conjugal community, even if the conjugal community was terminated

pre-petition.  See Brassett v. Brassett (In re Brassett), 332 B.R. 748, 754 (Bankr. M.D. La. 2005); In re Robertson, 203 F.3d 855, 861 (5th Cir. 2000) ("[c]ourts addressing the issue have held that community property which has not been legally divided as of the commencement of the bankruptcy case passes to the debtor's estate"); In re Hendrick, 45 B.R. 976, 983-4 (Bankr. M.D. La. 1985)[5].

Exemptions are an integral and fundamental component of a debtor's fresh start in bankruptcy and thus are liberally construed.  See Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq., Bankruptcy Law Manual § 5:34 (2012-2); Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 522.01 (16th ed. 2013); In re Farr, 278 B.R. 171, 48 (B.A.P. 9th Cir. 2002) (exemptions aid a debtor's fresh start by enabling debtor to emerge from bankruptcy with adequate assets); In re Toppi, 378 B.R. 9, 11 (Bankr. D. Me. 2007) (exemptions are liberally construed); In re Wegrzyn, 291 B.R. 2, 8-9 (Bankr. D. Mass. 2003) (exemptions should be construed liberally in favor of debtor to further the fresh start); Christo v. Yellin (In re Christo), 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999) aff'd 192 F.3d 36 (1st Cir. 1999).

Once the debtor claims exemptions pursuant to 11 U.S.C. § 522(l), objections to the same are governed by Fed. R. Bankr. P. 4003.  Except for limited circumstances[6], objections to exemptions must be filed within 30 days after the conclusion of the Section 341(a) meeting of creditors.  See Fed. R. Bankr. P. 4003(b)(1).  The objecting party has the burden of proof to establish the proper grounds of the objection.  See Fed. R. Bankr. P. 4003(c); In re Lozada Rivera, 470 B.R. 109, 119 (Bankr. D.P.R. 2012) ("the objecting party has the burden of proving that the exemptions are not properly claimed").  A party cannot contest the validity of a claimed exemption after the 30 day period expires and no extension has been obtained, even if the debtor has no colorable or good faith basis for having claimed the exemption.  Taylor v.

---

[5] These cases are from Louisiana, which has a Civil Code similar to Puerto Rico's.  Compare Louisiana's conjugal community property regime and its termination and partition as discussed in In re Brassett, 332 B.R. at 754-755, with the articles of the Civil Code of Puerto Rico and its case law cited and discussed in subsection (D) of this *Opinion and Order*, *infra*.

[6] These limited circumstances are: (a) fraudulently asserted exemptions; and (b) exemptions claimed under Section 522(q).  None of these circumstances have been averred in the instant case.

Freeland & Kronz, 503 U.S. 638, 643-646 (1992); In re Massey, 465 B.R. 720, 724 (B.A.P. 1st Cir. 2012) ("if an interested party fails to object to a claimed exemption within the time allowed, the subject property will be excluded from the bankruptcy estate even if the exemption's value exceeds the statutory limits").  Thus, unobjected exemptions become automatically allowed by virtue of Section 522(l) of the Bankruptcy Code.  Taylor, 503 U.S. at 643.

Once a debtor's claimed exemption is allowed by the court or is not objected, the exempted property falls under the coverage of Section 522(c) of the Bankruptcy Code, which states that:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose … before the commencement of the case, except—
>
> (1)    a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);
>
> (2)    a debt secured by a lien that is—
>
> (A)(i)  not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
>
> (A)(ii)  not void under section 506(d) of this title; or
>
> (B)    a tax lien, notice of which is properly filed.  11 U.S.C. § 522(c).

In the instant case there is no dispute that the Defendant's 50% undivided interest in the Real Property is property of the bankruptcy estate.  As such, it is subject to the provisions of the Bankruptcy Code and therefore is under the jurisdiction of this court.  Notwithstanding, the Defendant in the instant case has properly claimed an exemption over his share in the Real Property in the amount of $14,405 under Sections 522(d)(1) and 522(d)(5) of the Bankruptcy Code.  See Lead Case Docket No. 1, p. 24.  Therefore, at this juncture, that amount constitutes

exempted property that is no longer part of the bankruptcy estate pursuant to Sections 522(l) and 522(c).

*(C)*     *The Chapter 7 Trustee's Authority to Dispose of Property of the Bankruptcy Estate*

"The trustees administer the [bankruptcy] estates and perform other administrative duties in connection with the gathering of assets and the distribution of those assets, if any, to creditors."   Hon. Nancy C. Dreher, Hon. Joan N. Feeney and Michael J. Stepan, Esq., Bankruptcy Law Manual, Volume 1, § 4:4 (2012-2) p. 702.   "In addition to being given standing to represent the estate and the right to sue and be sued on behalf of the estate, trustees are given duties [e]specially applicable to the Chapter in which they are acting."  Id., § 4:7, p. 720.

Chapter 7 trustees must take possession of the non-exempt assets of the estate and to administer them for the benefit of creditors.  See 11 U.S.C. § 704(a)(1); Commodity Futures Trading Com'n v. Weintraub, 471 U.S. 343, 352 (1985).  "The trustee steps into the shoes of the debtor in the sense that the trustee can pursue all the claims that the debtor had and recover on them in furtherance of its obligations to gather the assets of the estate."  Bankruptcy Law Manual, *op. cit.*, § 4:8, pp. 721-722.  The bankruptcy trustee, as representative of the estate, has exclusive authority to use, sell, or lease estate property.  See 11 U.S.C. §§ 323(a) and 363(b)(1); Kirschenbaum v. Nassau County Dist. Atty. (In re Vitta), 409 B.R. 6, 15-16 (Bankr. E.D.N.Y. 2009) ("[o]nce the [bankruptcy] petition [is] filed, only the trustee has the authority to use, sell or lease property of the estate pursuant to 11 U.S.C. § 363").  "The Trustee's rights and duties to collect and reduce to money the property of the estate under § 704 are exclusive rights and may not be asserted by the creditors."  In re Gurley, 357 B.R. 868, 877 (Bankr. M.D. Fla. 2006).

Because the Chapter 7 Trustee is acting in the instant case as an administrator and representative of the bankruptcy estate under the provisions of the Bankruptcy Code, she may dispose of the property of the estate.

*(D)     The Debtor's Share in the Real Property*

Property rights in bankruptcy are created, defined and determined by state law.  See Travelers Casualty & Surety Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007), quoting Butner v. United States, 440 U.S. 48, 55 (1979).

"In Puerto Rico, upon marriage, a new entity is created, which commences on the day of marriage and will own property acquired for a valuable consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only; that obtained by the industry, salaries, or work of the spouses or of either of them; the fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."  In re Padilla, 2011 Bankr. LEXIS 4662 at **10-11, 2011 WL 5911243 at *4 (Bankr. D.P.R. 2011), citing Articles 1296 and 1401 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3622 and 3641, and Fernández-Cerra v. Commercial Insurance Co. of Newark, 344 F. Supp. 314, 316 (D.P.R. 1972). The Civil Code of Puerto Rico denominates this new entity as the "conjugal partnership".  See Articles 1295-1315 of the Civil Code, 31 L.P.R.A. §§ 3621-3681; F.D.I.C. v. Martínez Almodóvar, 671 F. Supp. 851, 873 (D.P.R. 1987) ("Under the law of Puerto Rico, a conjugal partnership is established by the act of marriage.")  "By virtue of the conjugal partnership the earnings or profits indiscriminately obtained by either of the spouses during the marriage shall belong to the husband and the wife, share and share alike, upon the dissolution of the marriage."  Article 1295 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3621.  Such conjugal partnership is "dissolved" only by death or a final judicial decree terminating it or nullifying it on the grounds provided in the Civil Code of Puerto Rico.  Article 1315 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 3681.  Only then can either spouse --or the heirs of a deceased one-- claim his/her/their half in said partnership pursuant to Articles 1295 and 1315 of the Civil Code of Puerto Rico Civil, 31 L.P.R.A. §§ 3621 and 3681.  Similarly, Article 105 of the Civil Code of Puerto Rico states that "[a] divorce carries with it a complete dissolution of all

matrimonial ties, and the division of all property and effects between the parties to the marriage." 31 L.P.R.A. § 381.

"Once the marital community [conjugal partnership] has ceased to exist, its members share an **ordinary community**. Even if the property remains undivided for a long time, it would in any case be property in the process of liquidation. This new community is no longer governed by the norms of the marital community [conjugal partnership] that up until then were applicable to the assets of the spouses." García González v. Montero Saldaña, 7 P.R. Off. Trans. 353, 363-364, 107 D.P.R. 301, 331-332 (1978) (emphasis added), citing Puig Brutau, Fundamentos de Derecho Civil, Tomo 4, Vol. 1 (1967), p. 784. Also see Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, Vol. 1, Interamerican University School of Law, 2007 ed., p. 457; Rosselló Puig v. Rodríguez Cruz, 183 D.P.R. 81, 94 (2011) (distinguishing the conjugal partnership the from the "post-marital community"[7]). Furthermore, in Calvo Mangas v. Aragonés Jiménez, 15 P.R. Off. Trans. 294, 307, 115 D.P.R. 219, 228 (1984), the Supreme Court of Puerto Rico ruled as follows:

> According to arts. 105 and 1315 of the Civil Code, 31 L.P.R.A. §§ 381 and 3681, it is clear that once a marriage is dissolved by a divorce judgment, the marital community terminates. González López v. Méndez García, 102 D.P.R. 383, 395 (1975); Vega v. Tossas, 70 D.P.R. 368, 372 (1949). When said marital community comes to an end, the property is owned in common by the ex-spouses. In absence of contracts or special provisions, this concept shall be governed by the provisions to such effects contained in arts. 326-340 of the Civil Code, 31 L.P.R.A. §§ 1271-1285.

Articles 326-340 of the Civil Code of Puerto Rico, *supra*, govern properties owned in common ("comunidad de bienes"). In particular, Article 327 of the Civil Code provides that "[t]he share of the participants in the benefits as well as in the charges, shall be proportioned to their respective shares." 31 L.P.R.A. § 1272. In the case of an ordinary community created upon the termination of a conjugal partnership, each ex-spouse, now co-member, owns a 50% share of the community. See Article 1322 of the Civil Code, 31 L.P.R.A. § 3697 ("The net

---

[7] In the Spanish version of the opinion, the Supreme Court of Puerto Rico denominated the post-marital community as "comunidad posganancial". Rosselló Puig v. Rodríguez Cruz, 183 D.P.R. at 94. No official translation of that opinion has been issued as of the date of the instant one.

-10-

remainder of the partnership property shall be divided, share and share alike, between the husband and the wife, or their respective heirs."); Calvo Mangas v. Aragonés Jiménez, 15 P.R. Off. Trans. at 307, 115 D.P.R. at 228 ("the participation of the co-owners --ex-spouses-- is on a share and share alike basis").

In the instant case, the conjugal partnership between the Plaintiff and the Defendant was dissolved on June 15, 2010 by virtue of the divorce decree entered by the Puerto Rico Court of First Instance (Docket No. 1, pp. 9-11). Since then, the ex-spouses have equally shared an ordinary community that includes the Real Property. Nevertheless, when the Defendant filed for bankruptcy on February 12, 2012 (Lead Case Docket No. 1), the bankruptcy estate immediately comprised all of the Debtor's nonexempt property, including the unpartitioned post-marital community property under Section 541(a)(2) of the Bankruptcy Code. See In re Brassett, 332 B.R. at 754-755; In re Robertson, 203 F.3d at 861-862. Therefore, the Real Property of the post-martial community property is subject to the jurisdiction of this court.

*(E)	The Domestic Relations Exception*

The Defendant claims that this court lacks jurisdiction to entertain the instant *Complaint* under the domestic relations exception. See Docket No. 6, p. 3, ¶ 10 ("It is well settled law that 28 U.S.C. § 1332 does not confer jurisdiction to Bankruptcy Courts over domestic relations issues"). To support his contention, the Defendant cites González Canevero v. Rexach, 793 F.2d 417 (1st Cir. 1986).

In Mooney v. Mooney, 471 F.3d. 246, 248 (1st Cir. 2006), the U.S. Court of Appeals for the First Circuit ruled that the doctrine in González Canevero *v.* Rexach, *supra*, had been abrogated by the Supreme Court in Ankenbrandt v. Richards, 504 U.S. 689 (1992), and Marshall v. Marshall, 547 U.S. 293 (2006). Thus, the court will consider and apply the current case law.

"The premise behind the domestic relations exception is that federal courts should not interfere in domestic disputes, including disputes over marital property or the custody of children, because state courts have developed the proficiency and specialized resources

-11-

necessary to handle such cases." Elias v. Elias, 2013 U.S. Dist. LEXIS 98984 at **24-25, 2013 WL 3777069 at *8 (D. Mass. 2013), citing Ankenbrandt v. Richards, 504 U.S. at 703.  In Ankenbrandt, the Supreme Court held that the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees." 504 U.S. at 703.  In Marshall v. Marshall, 547 U.S. at 305-307, the Supreme Court further emphasized that abstention is not appropriate when a claim, though related to a domestic relations issue, does not itself challenge a divorce, alimony, or child custody decree.  Also see Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003) ("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees."); Mooney v. Mooney, 471 F.3d. at 248 (the domestic relations exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree."); In re Pérez, 2013 Bankr. LEXIS 984 at *9, 2013 WL 959842 at *3 (Bankr. D.P.R. 2013) (the domestic relations exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree.")

The instant case does not involve a divorce, alimony or child custody, but rather hinges on the administration and possible disposition by the Chapter 7 Trustee of the Defendant's 50% share in the post-marital community property he co-owns with his ex-wife, the Plaintiff, which includes the Real Property.  Therefore, the domestic relations exception is inapplicable.

*(F)*     *The Liquidation of Post-Marital Community Property*

In ¶ 21 of her *Complaint*, the Plaintiff "requests the liquidation of community property", referring to the post-marital community property between her and her ex-husband, the Defendant (Docket No. 1, p. 5, ¶ 21).

Subchapter VII of Chapter 273 of Civil Code of Puerto Rico establishes the procedure to liquidate a former conjugal property. See Articles 1316-1326 of the Civil Code, 31 L.P.R.A. §§ 3691-3701.  In practice, the liquidation of the common property does not necessarily coincide with the divorce. See Rosselló Puig v. Rodríguez Cruz, 183 D.P.R. at 94.  Liquidation of a post-marital community requires the following: (1) preparation of an inventory; (2)

appraisal/valuation of the property in accordance to 31 L.P.R.A. § 3699; (3) liquidation of capital (after the debts, charges and obligations of the partnership have been paid insofar as the inventory may reach); (4) division and adjudication of the net remainder of the post-marital community. See Janer Vilá v. Superior Court, 90 P.R.R. 275, 295-296, 90 D.P.R. 281, 300-301 (1964).

The court has not been placed in a position to rule upon the proposed liquidation of the post-marital community. The court is also unaware if the parties have proposed such liquidation at the divorce proceedings before the Puerto Rico Court of First Instance. Therefore, the court declines to make any determination in that regard.

*(G)     The Distribution Scheme in Chapter 7 Cases*

The Plaintiff proposes to purchase the Defendant's 50% share of the Real Property in the total amount of $7,400.00, after valuating the Real Property and making the following deductions:

| | | |
|---|---|---|
| A. | Real Property Value | $129,000.00 |
| B. | Less Mortgage Balance | 71,655.31 |
| C. | Liquidation Value[8] | 57,334.69 ÷ 2 |
| D. | Defendant's Participation | 28,672.35 |
| E. | Less Plaintiff's Monthly Mortgage Credit | 13,073.00 |
| F. | Less Defendant's Child Support Debt as of the date of the petition (Claim Register No. 4-1) | 4,150.92 |
| G. | Total after deductions | 8,922.08 |
| H. | Less half of the closing costs | 1,552.08 |
| | **TOTAL** | **7,400.00** |

See ¶ 20 of the *Complaint*, Docket No. 1, p. 5.

---

[8] To be divided between the Plaintiff and the Defendant.

-13-

The Defendant avers that the Plaintiff's proposed calculations and deductions subvert the order of distribution established by the Bankruptcy Code and the debtor's right to claim exemptions under Sections 522.  See ¶¶ 12-14 of the *Motion to Dismiss*, Docket No. 6, pp. 3-4.

Having already established that the Defendant has properly claimed his exemptions, and that exempted property is not part of the bankruptcy estate, the court proceeds to analyze the Plaintiff's proposition under the distribution scheme established for Chapter 7 cases.

Section 725 of the Bankruptcy Code mandates that "[a]fter the commencement of a [bankruptcy case] under … chapter 7, but before final distribution of property of the estate under section 726 of this, the [chapter 7] trustee, after notice and a hearing, shall dispose of any property in which an entity other than the [bankruptcy] estate has an interest … and that has not been disposed of under another section of this title."  11 U.S.C. § 725.

Section 726 of the Bankruptcy Code sets forth the distribution scheme of property of the bankruptcy estate in Chapter 7 cases.  "It dictates the order for distribution of property of the estate **that has been reduced to money** by the trustee under the requirements of Section 704(a)(1)[9]."  Alan N. Resnick & Henry J. Sommer, 6 Collier on Bankruptcy ¶ 726.01 (16th ed. 2013) (emphasis added).  The Chapter 7 Trustee reduces the bankruptcy "estate to cash by liquidating the debtor's nonexempt assets."  Alan N. Resnick & Henry J. Sommer, 6 Collier on Bankruptcy ¶ 726.01 (16th ed. 2013).  Once the nonexempt assets have been reduced to money, Section 726(a) sets forth the order of distribution in normal liquidation cases like the instant one[10] as follows:

> (a) Except as provided in section 510 of this title[11], property of the estate shall be distributed—

---

[9] Section 704(a)(1) requires the trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).

[10] Section 726(c) sets forth special distribution rules in cases in which there is community property and other property in the estate.  It is not applicable to the facts of the instant case because there is no conjugal community property for the reasons previously stated.

[11] Section 510 governs subordination agreements.

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed on or before the earlier of—

    (A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or

    (B) the date on which the trustee commences final distribution under this section;

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;
(B) timely filed under section 501(b) or 501(c) of this title; or
(C) tardily filed under section 501(a) of this title, if—

    (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

    (ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and

(6) sixth, to the debtor.  11 U.S.C. § 726(a).

"The Bankruptcy Court cannot reorder the priority scheme established for claims by Congress."  In re Pyxsys Corp., 288 B.R. 309, 314 (Bankr. D. Mass. 2003), quoting Omni Partners, L.P. v. Pudgie's Dev., Inc. (In re Pudgie's Dev., Inc.), 239 B.R. 688, 692 (Bankr. S.D.N.Y. 1999).  Also see United States v. Noland, 517 U.S. 535, 542 (1996) (holding that the

bankruptcy court could not invoke its equitable powers to subordinate claims in abrogation of the scheme established by Congress).

The court is unable to determine the validity of the Plaintiff's valuation on the Real Property, which is the initial basis of her calculation, over which the bankruptcy estate is entitled to 50% after deducting the Defendant's claimed exemption in *Schedule A* pursuant to 11 U.S.C. § 522(l). Notwithstanding, the court agrees with the Defendant's proposition that even if they were taken as true, the Plaintiff's calculations and deductions in ¶ 20 of her *Complaint* (Docket No. 1, p. 5) deviate from the distribution scheme established in the Bankruptcy Code. The Plaintiff seems to impose the totality of her claim upon one unliquidated asset of the Defendant that has not yet been reduced to money, irrespective of the other creditors and/or their interests in the distribution under Section 726(a). The Plaintiff also obviates the Defendant's right to his properly claimed exemptions. Moreover, the Plaintiff's proposed distribution also seeks to collect a claim of $13,073.00 over which she filed no proof of claim. Compare Claims Register No. 4-1 in the amount of $4,150.92 for unpaid child support with ¶ 20(e) of her *Complaint* (Docket No. 1, p. 5). Therefore, the court cannot sustain the Plaintiff's distribution scheme as proposed in her *Complaint*.

Conclusion

In view of the foregoing, the court partially denies the Defendant's *Motion to Dismiss* on the grounds of lack of jurisdiction under the domestic issue exception. Nevertheless, the court grants the *Motion to Dismiss* on the grounds that the *Complaint* deviates from the distribution scheme established in the Bankruptcy Code and thus the Plaintiff has failed to state a plausible claim upon which relief can be granted. Therefore, dismissal is warranted under Fed. R. Civ. P. 12(b)(6).

SO ORDERED. Judgment will be entered separately.

In San Juan, Puerto Rico, this 16th day of September, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge

-16-